# CASES

ADJUDGED IN

# THE COURT OF CHANCERY

## OF THE STATE OF NEW-JERSEY.

### APRIL TERM, 1838.

---

ANDREW SNOWHILL and others, heirs at law of JAMES E. SNOWHILL, deceased, v. The surviving Executor of REBECCA SNOWHILL, deceased.

Where an act of the legislature authorizes a guardian to make sale of the real estate of his ward, and directs the proceeds out of the sale to be put at interest for the benefit of the ward, without making any provision for the disposition of the fund in the event of the infant's death: upon the death of the infant, intestate, the proceeds of such sale will go to his heirs at law, pursuant to the statute regulating the descent of real estate, and not to his next of kin.

This court will give to a decision of the court of appeals made in the same cause, its fair and just legal effect.

Where a decree of the chancellor, allowing a general demurrer, is reversed in the court of appeals, and the demurrer overruled, the court of appeals should direct the record and proceedings in the cause to be remitted to the court of chancery.

Where the real estate of an infant is sold by the guardian, (by virtue of an act of the legislature,) the guardian, or her representatives, may retain so much of the money arising from the sale, to satisfy a claim of the guardian in her own right, as the land would have been liable for in case it had not been sold.

The *choses in action* of the wife, survive to her on the death of her husband, unless he reduce them into possession during his life.

What will constitute a reducing of a *chose in action* of the wife into possession, so as to deprive her of the claim as survivor?—*Qu.*

A legacy to a married woman is a *chose in action*, and governed by the same rule (as to survivorship) as all other choses in action.

THE facts of the case fully appear in the opinion of the chancellor.

*Nevius*, for complainants.

*I. H. Williamson* and *Wall*, contra.

The land of the infant having been sold by virtue of an act of the legislature, and converted into money, must be considered as personal property, and go to the next of kin.   There is no equity between the heirs and the personal representatives : they must take the property as they find it. 3 *Brown's Ch. Rep.* 515 ; 5 *Vesey*, 303.

The court of chancery may direct the land of an infant to be converted into money, or money into land, for the benefit of the ward.   The legislature may exercise the same power ; and where the conversion is made by lawful authority, there is no equity between the heir and the personal representative. 2 *Ves. jun.* 77 ; 3 *John. Ch. Rep.* 347, 370 ; 3 *Brown*, 510.

And where the property is changed by the act of God, the heirs and personal representatives must take the property as they find it ; so where the conversion is by the wrongful act of a stranger, not a breach of trust.   3 *Dessaus.* 21 ; 1 *Ves. jun.* 460.

It is only in cases of breach of trust by the guardian or trustee, and where the property is converted by him without lawful authority, that the court will consider money turned into land, as money, and *e converso.* 1 *Vernon*, 435 ; *Ambler*, 706, 419 ; 1 *Fonb.* 82, *note B. ;* 2 *Eden's Rep.* 148, 154, *note ;* 3 *P. W.* 99, 101.

The land of James E. Snowhill having been sold by the guardian, by virtue of an act of the legislature, and converted into money, must go to the next of kin.

This question is still open before this court, notwithstanding the decision of the court of appeals.   That court merely over-

ruled the demurrer.    At law the decision would have been final, but in this court the party may set up the same matter in his answer.

A new case is presented by the answers of the defendants, different from that decided by the court of appeals.

Rebecca Snowhill, the guardian, is entitled to have her legacy bequeathed by her father, paid out of the real estate of the infant.

George Snowhill never reduced the legacy into possession : it survives, therefore, to his wife, and her personal representatives are entitled to it.    The giving of a legacy to a debtor's wife, does not discharge the debt.    A legacy may satisfy a *creditor's* claim, but can never cancel a debt due to the testator.    *Clancy on the Rights of Women*, 2, 3, 4, 101, 111 ; 3 *Ves. jun.* 469 ; 9 *Ves.* 98–9.

A legacy to a married woman is a chose in action, and rests on the same principle.    *Law Library, No. Dec.* 1837 ; *Ward on Legacies*, 33 ; 11 *Viner*, 377, *sec.* 8 ; 2 *Dickens*, 491 ; *Clancy*, 109.

It is necessary that the husband should do some act to reduce the legacy into possession, or it will survive to the wife.    9 *Ves.* 173 ; 12 *Ves.* 496 ; 16 *Ves.* 413 ; 2 *Madd.* 133 ; 5 *Ves.* 514 ; 2 *Green's Rep.* 516, 262 ; 2 *Kent's Com.* 137–8.

The land descended from George Snowhill to his son James, charged with the debt due to the estate of Matthias Mount.    Had the land remained unsold, the legatee would have been entitled to her legacy.    The heirs at law claim the money as land ; they must take it subject to the incumbrance.

The sale under the act did not affect creditors.    Mrs. Snowhill, the legatee, was ignorant of her rights.    This court will relieve against her mistake.    1 *Cond. Eng. Chan. Rep.* 541, 283 ; 1 *P. W.* 354 ; *Mosely*, 364 ; 3 *Swanston*, 186.

Her representatives may retain the amount of the legacy out of the money in their hands, not as an offset.    2 *P. W.* 128, 298 ; 4 *Ves.* 763 ; 5 *Madd.* 28.

[Snowhill et al. v. Executor of Snowhill.]

*E. Van Arsdale,* in reply.

The question as to the right of the heirs over the personal representatives to receive the proceeds of the sale of the land, has been settled by the court of appeals. This court must give effect to the decision of the higher tribunal.

It is the constant practice of the court of chancery, to preserve the rights of inheritance on the sale of an infant's property. 11 *Ves.* 278; 2 *Story's Eq.* 585; 6 *Ves.* 6, 7.

The legacy to Rebecca Snowhill was virtually reduced into possession by her husband, and did not survive to the wife. He owed the estate, the legacy was in his hands, and he had a right to retain it. 9 *Vesey,* 101.

THE CHANCELLOR. George Snowhill died in the year 1824, intestate, seized in fee of one undivided half part of a tract of land in the county of Middlesex ; leaving a widow, Rebecca Snowhill, and one child, a son, James E. Snowhill, his sole heir at law, an infant of tender years. The legislature of New-Jersey, on the petition of Rebecca Snowhill, who had been appointed guardian of her son James, on the 15th of December, 1826, passed an act authorising the said Rebecca Snowhill to sell the said lands belonging to her son, and which descended to him as heir at law of his father; and directed the proceeds of such sale, after deducting the expenses incident thereto, to be put at interest; one third part of such interest to be paid to Rebecca Snowhill, as the widow of George Snowhill, and the remaining two thirds for the use of the said James E. Snowhill. This act made no provision for disposing of the fund arising from this sale, in the event of James E. Snowhill's death, but left all parties to their rights at law and in equity. On the 3d day of April, 1827, Rebecca Snowhill conveyed the aforesaid lands, upon a sale made under said act, to John H. Disborough, for three thousand five hundred dollars, and took a bond and mortgage upon the same lands as security for the purchase money. After the passing of this act, and after the sale made under it, James E. Snowhill died, intestate. The complainants, as the heirs at law of the said James

E. Snowhill, after his death, filed their bill in this cause, against Rebecca Snowhill and John H. Disborough, in their lifetimes, claiming the money arising from this sale, and setting out the case as here stated.

To this bill, the defendants severally filed a general demurrer, denying the equity of the complainants' bill. These demurrers were argued before chancellor Vroom, who sustained the demurrers, and directed the bill to be dismissed. From this decision the complainants appealed to the court of appeals; which court, after argument, reversed the chancellor's opinion, directed the demurrers to be overruled, and remitted the record and proceedings in the cause to this court, to be proceeded in according to law, and the practice of the court.

I am very clear as to my duty under this decision. I must give to it, without any reference to my own judgment, its fair and just legal effect. It is a decision, in the same cause, of a court of the highest authority in the state. In fact, I should not think it proper to express an opinion on the subject, considering this part of the case as already settled. Can there be any doubt as to the legal effect of that decision? The facts stated by the bill, are admitted by the demurrer. The plain question upon the bill and demurrer was, whether the heirs at law of James E. Snowhill, upon the case made by the bill, were entitled to the money arising from the sale of his lands. The decision established that right. Had no new question been made by the answers, I should have done nothing more with the cause, than to have made a reference to ascertain the amount of the money in the hands of Rebecca Snowhill, to the end that a final decree might have been made, directing the same to be paid over to the complainants.

As to form, the decree of the court of appeals was strictly correct. That court could not with propriety, upon a general demurrer, have done any thing else than send back the cause. They did not mean to conclude the parties from setting up in their answer any new ground of defence they might have. Any new matter, therefore, which is disclosed by the defendant's an-

swer, and not set out in the bill, is fairly before the court, and must now be settled. On the argument, I allowed counsel to go into the whole case, not because I had any hesitation as to the plain path of my duty on this part of the subject, but because, at the breaking of the cause, I could not foresee what bearing it might have on the new matter set up by the answer.

Pending the proceedings thus far, Rebecca Snowhill died, and the answer is filed by William W. Conover and Charles G. M'Chesney, as her surviving executors. By that answer it is alleged, that George Snowhill, in the year 1811, purchased of Matthias Mount, the father of his wife Rebecca, his homestead farm, for five thousand dollars, which farm he afterwards exchanged with William W. Conover for the lands which he left at his death, and which were subsequently sold under the aforesaid act of the legislature. That George never paid this money, but gave his five bonds, each for one thousand dollars, and a mortgage on the same premises, to secure the purchase money. That Matthias Mount died, leaving a last will and testament, and making his two daughters, Mrs. Conover and Mrs. Snowhill, residuary legatees of his estate; and that the principal part of this estate consisted in the debt due from George Snowhill. That George died, leaving a large sum due on those bonds, which is still unpaid, and without ever having reduced into possession the legacy left his wife, under the will of her father. The defendants, under these circumstances, insist that the legacy survived to Mrs. Snowhill, the widow of George, and that, as her representatives, they have a right in equity to retain the money sought to be recovered by the complainants in this action, or as much as may be necessary to satisfy this legacy. That, as the complainants ask the aid of a court of equity to establish their demand, they must first, in the language of the law, do equity. That, as these very lands descended from George Snowhill to his son, they were subject to his debts, and would, if remaining unsold, have been liable to pay the bonds due from George to the Mount estate, out of which money this legacy is due. That the court will make the fund arising from the sale of the

lands, answer the same purposes of justice that the lands must have done if not sold. And especially, that they will not withdraw the money out of the hands of a party who has so strong a claim in equity to retain it.

There is great force in this position, and it will be found by the cases, that courts of equity have been very liberal on the subject of retaining money under like circumstances. The rule is established, that a party must do right himself, before the court will extend its hand to his relief.

The cases on the subject of retaining money, have gone so far, as to enable an executor to retain money, when not due directly to the party, but to a trustee for the party. 2 *Peere Williams*, 299 ; *Ibid*, 129 ; 4 *Vesey*, 764 ; 5 *Madd*. 32.

I agree, from a full consideration of the cases on this subject, that Rebecca Snowhill may retain so much of the money arising from the sale of the lands, under the act of the legislature, as those lands would have been liable for to her, in case they had not been sold. It would be most unreasonable to withdraw it from the hands of her executors, until a claim of that character was satisfied. This raises several important questions :—1. Has Rebecca Snowhill any claim for the legacy under the will of her father ? 2. Does George Snowhill owe any thing to the estate of Matthias Mount ? And 3. Could Rebecca Snowhill, if she have any claim, have required payment from the lands of her son ?

Upon the first point, it is quite certain, that by the will of Matthias Mount, she is made a residuary legatee, and that such estate consisted of a debt due from George Snowhill. I can see no act done by George Snowhill reducing this legacy into possession, and if not, the right survived to his wife on his death. In 2 *Green's Rep*. 264 and 516, it is clearly settled in our own courts, that the choses in action of the wife survive to her at the death of her husband, unless he reduce them into possession during his life. This is settled law. What will constitute a reducing of a chose in action of the wife into possession, so as to deprive her of the claim as survivor, has often been made a question, and the cases are not very clear. It would seem to be one rule,

[Snowhill et al. *v.* Executor of Snowhill.]

that he must do some act, by which he need not join his wife, in an action to recover it. But I am not called upon to settle this question. It is certain the husband must do something: in the present case he does not appear to have taken a single step in reference to this legacy. He brought no suit; he made no change in the character of the demand; he does not appear ever to have troubled himself about it in any way. This was, no doubt, owing to the fact, that the legacy could only be paid out of the money he owed himself to the testator. He probably acted on the idea, that if demand was made of him for the payment of his bonds, he would gain a credit for the amount of his wife's legacy. Had he made such an arrangement with the representatives of Mount, and had the credit made on his bonds, the claim of his widow must have been gone. But he did nothing: he left it as he found it at the testator's death; and I cannot, without violating well-settled principles of law, hold it in any other way, than that at his death, the right of his wife to this legacy survived to her. His personal representatives could have maintained no action for its recovery. A legacy to a married woman is a chose in action, and must be governed by the same rule as all other choses in action. *Clancy's Rights of Women,* 109; 2 *Dickens,* 491.

The next question is, whether George Snowhill owes any thing to the estate of Matthias Mount? And upon this subject I find considerable difficulty, from the manner in which this business has been conducted. It is very difficult to discover the true state of the case. Most of the parties have died, and it was never contemplated that the rights of parties would require any further investigation on this subject. The executors named in the will of Matthias Mount, never acted; but letters of administration, with the will annexed, were granted to William W. Conover, who in December, 1822, filed an inventory of the estate, consisting, with the exception of a small note of thirty-five dollars against Francis Larrison, entirely of the bonds of George Snowhill; amounting, with interest, to six thousand one hundred and thirty-one dollars and ten cents. One of the bonds had been

given up by the testator in his life-time, which left four bonds, each of one thousand dollars, and which, with interest, made the aforesaid sum. One of these bonds, by an endorsement upon it, appears to have been paid off, except six dollars and sixty-three cents. There is upon each of these bonds an endorsement, signed by William W. Conover and Rebecca Snowhill, in the following words:—"February 17, 1835. The within bond settled and divided, agreeably to the will of Matthias Mount." What this endorsement means, has given rise to much speculation, and I confess it is very difficult to understand. If it was intended to discharge the bonds entirely, why not cancel them at once? But they are kept alive; and it must be remembered, that William W. Conover, at this very time, was the administrator with the will annexed, of Matthias Mount, and also interested, in right of his wife, in the bonds, as a legatee under his will. Amidst so much uncertainty, I am compelled to place that construction on these endorsements, which appears to me nearest the truth. My belief, from all the evidence, is, that William W. Conover and Rebecca Snowhill settled absolutely and entirely all the claims of William W. Conover with the estate of George Snowhill, and by that settlement the bonds were not paid off or cancelled, but each party was to have an equal interest in those bonds. They constituted the whole estate of Matthias Mount, in which they were equally interested as residuary legatees. They therefore use the expressions " *settled* and *divided* the within bonds." The payments made, were probably by the board of Mr. and Mrs. Mount, who lived with George after he purchased the farm. At all events, it stands endorsed as a payment, and must be so considered. I consider, therefore, George Snowhill as indebted to the estate of Matthias Mount, for the face of the four bonds, with interest, deducting the payments which are endorsed thereon.

The third point to be considered, is, whether Rebecca Snowhill could have required payment of her legacy from the lands of her son James, had they not been sold? Upon this there can be no difficulty. The lands descended to James the son, subject to the payment of the debts of his father, and upon a suit brought

must have satisfied those debts. The money, when collected, must have been applied by the representatives of Mount according to the provisions of his will.

I decide this cause on the matters set up in the answer, upon the single ground, that the representatives of Rebecca Snowhill, who are called upon to pay over to the complainants monies in their hands, have a right in equity to retain so much of those monies as will satisfy a legacy due her, and which the lands out of which that fund has arisen, were bound to pay. It is clear, that she was bound first to apply the personal estate of George Snowhill, before any of his lands could be reached, in payment of his debts. By the settlement of her accounts in the orphan's court, it seems she had a balance in her hands of one thousand six hundred and six dollars and seven cents. That sum must, therefore, be first applied towards satisfying her legacy.

Having thus settled the principles on which I consider myself bound to decide this case, there must be a reference to a master to ascertain and report,

1. The amount in the hands of the surviving executor of Rebecca Snowhill, on the sale of the lands of James E. Snowhill, under the act of the legislature, after making the allowances authorized by that act.

2. The amount due her for her legacy, under the will of her father, Matthias Mount, deducting therefrom the personal estate of George Snowhill in her hands.

3. The amount due from George Snowhill on his said bonds.

And I reserve all other equity to the coming in of the master's report.

It will be observed, that I have taken no notice of that part of the case upon which much labor has been expended in taking the evidence, going to show that George Snowhill made improvements on the place he purchased of Matthias Mount; and on the other hand, that he never paid for the place, but received it, with all the stock, directly from the family of his wife. In the view I take of the case, all these facts can make no difference. He purchased the lands, and took a deed for the same.

He died seized in fee in his own right, and it cannot vary the case, whether he bought of Matthias Mount, or a stranger to him and his wife.

Rule accordingly.